**216**

UNITED STATES, Appellee,

v.

Lauren L. MOGLIA, Specialist Four, U. S. Army, Appellant.

No. 31,761.

CM 433768.

U. S. Court of Military Appeals.

July 18, 1977.

*Captain Harvey T. Oringher* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Major Richard J. Goddard,* and *Captain Ronald L. Gallant.*

*Captain William C. Kirk* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen* and *Major John T. Sherwood, Jr.*

Opinion of the Court

COOK, Judge:

In accordance with his pleas, the appellant was convicted by a general court-martial of involuntary manslaughter, possession and transfer of heroin, and possession of marihuana in violation of Articles 119 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 919 and 934, respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for 7 years, total forfeitures, and reduction to E–1. Pursuant to a pretrial agreement the convening authority approved only so much of the sentence as extended to a bad-conduct discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to E–1, and this action was affirmed by the United States Army Court of Military Review. We granted review to determine whether the specification under Charge I properly alleged the offense of involuntary manslaughter under the Code and whether an adequate factual basis was established as to this offense during the providence inquiry. Additionally, we granted review to determine whether the appellant was improperly charged under Article 134 rather than Article 92 as to the drug offenses and whether his pleas of guilty were predi-

cated on a substantial misunderstanding of the maximum imposable sentence.

The specification of Charge I alleged: In that Specialist Four (E–4) Lauren L. Moglia . . . did . . . while perpetrating an offense directly affecting the person of Specialist Five (E–5) Donald Wayne Willcuts, to wit: wrongful transfer of a habit forming narcotic drug, unlawfully kill . . . Willcuts by furnishing some amount of a habit forming narcotic drug, heroin, to . . . Willcuts which caused his death after injection into his body.

Article 119(b), UCMJ, 10 U.S.C. § 919(b), defines involuntary manslaughter in the following manner:

Any person subject to this chapter who, without an intent to kill or inflict great bodily harm, unlawfully kills a human being—

(1) by culpable negligence; or

(2) while perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person;

is guilty of involuntary manslaughter and shall be punished as a court-martial may direct.

As is apparent from the quoted specification, the appellant was charged with the second type of involuntary manslaughter— an unintended death resulting from an offense which directly affected the person of the deceased.

On appeal, the appellant submits his act of transferring heroin to the deceased was not an offense "directly affecting the person" of the deceased. We disagree. Article 119(b) does not specify the meaning of an offense which directly affects the person, but paragraph 198*b*, Manual for Courts-Martial, United States, 1969 (Rev.), sets forth the following:

By an offense directly affecting the person is meant one affecting some particular person as distinguished from an offense affecting society in general. Among offenses directly affecting the person are the various types of assault,

battery, false imprisonment, voluntary engagement in an affray, and maiming. Thus, while some offenses are specified in the quoted paragraph, the list is not exhaustive, and we must look to the nature of the offense for this determination.

■ In *People v. Taylor,* 11 Cal.App.3d 57, 89 Cal.Rptr. 697 (1970), the court held the furnishing of a restricted drug was an act inherently dangerous to human life. *Accord, United States v. Uno,* 47 C.M.R. 683 (A.C.M.R.1973); *People v. Cline,* 270 Cal. App.2d 328, 75 Cal.Rptr. 459 (1969). Obviously, heroin is both a dangerous and a restricted drug in the military. *See generally United States v. Romero,* 1 M.J. 227 (1975). Furthermore, the transfer in the present case was directly related to a particular person (the deceased), not the public in general, and such transfer was made under circumstances indicating subsequent use by the deceased. We, therefore, conclude the transfer of heroin was an inherently dangerous act which directly affected the person of the deceased.

The appellant also submits the transfer of the heroin was not the proximate cause of death. In *United States v. Romero, supra,* the Court sustained a finding of guilty of negligent homicide when the accused assisted the victim in injecting heroin. As noted in *Romero, supra* at 229:

To be proximate, an act need not be the sole cause of death, nor must it be the immediate cause—the latest in time and space preceding the death. But a contributing cause is deemed proximate only if it plays a material role in the victim's decease. *See United States v. Houghton,* 13 U.S.C.M.A. 3, 32 C.M.R. 3 (1962); 1 Warren, Homicide § 59 (perm. ed. 1938); 1 Wharton, Criminal Law and Procedure § 290 (1957).

Although in this case the appellant did not inject the heroin into the deceased, his transfer of the heroin enabled the deceased to use the contraband. Appellant acknowledged that the heroin he transferred to the

deceased was the same heroin which was ingested by the deceased causing his death approximately 4 hours after the transfer. Accordingly, the transfer played a major role in the deceased's death, and it was, therefore, a proximate cause of such death; and the act of deceased of injecting the heroin did not absolve the appellant. *State v. Thomas,* 118 N.J.Super. 377, 288 A.2d 32 (1972), *cert. denied,* 60 N.J. 513, 291 A.2d 374 (1972); *People v. Taylor, supra; People v. Cline, supra; Ureta v. Superior Court,* 199 Cal.App.2d 672, 18 Cal.Rptr. 873 (1962).[1] We, therefore, conclude the specification of Charge I alleged an offense.

We turn now to appellant's contention his plea of guilty to involuntary manslaughter was improvident.[2] Appellant clearly acknowledged the heroin transferred to the deceased was the same heroin ingested by the deceased causing his death and he was convinced of his guilt. Nevertheless, on appeal, he submits his plea of guilty to involuntary manslaughter should be rejected because he was not present when the deceased ingested heroin. Thus, the appellant reasons he was not personally aware the heroin transferred was the same heroin ingested by the deceased.

■ Contrary to civilian practice, Article 45, UCMJ, 10 U.S.C. § 845, requires a plea of guilty to be in accordance with actual facts. *United States v. Johnson,* 23 U.S.C. M.A. 416, 50 C.M.R. 320, 1 M.J. 36 (1975); *United States v. Logan,* 22 U.S.C.M.A 349, 47 C.M.R. 1 (1973). However, the inability of an accused to recall the facts relating to an offense does not preclude him from entering a plea of guilty if he is convinced of his guilt. *United States v. Luebs,* 20 U.S.C.M.A. 475, 43 C.M.R. 315 (1971); *United States v. Butler,* 20 U.S.C. M.A. 247, 43 C.M.R. 87 (1971). As indicated in *Luebs* and *Butler,* personal awareness is not a prerequisite for a plea of guilty, but, rather, an inquiry must be made to ascertain if an accused is convinced of his own guilt. Such a conviction, as in *Luebs* and *Butler,* may be predicated on an accused's assessment of the Government's evidence against him.

■ The parties stipulated at trial that a named individual was present when the transfer took place and this individual subsequently transported the deceased to an apartment where he observed the deceased inject heroin. They further stipulated the deceased was then taken to a hospital where he was pronounced dead on arrival. Under the circumstances, we are convinced the appellant's plea of guilty to manslaughter was not inconsistent with the known facts and was predicated on the appellant's conviction of his own guilt which was, in turn, based on his assessment of the evidence against him. Therefore, an adequate factual basis was established on the record.

The issues relating to the maximum punishment to which the appellant was subject for the drug offenses resulted from our holding in *United States v. Courtney,* 1 M.J. 438 (1976). As that decision has been determined not to be applicable to cases tried before its publication, the issues are no longer viable. *United States v. Jackson,* 3 M.J. 101 (C.M.A.1977).

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

1. In *People v. Pinckney,* 38 A.D.2d 217, 328 N.Y.S.2d 550 (2d App.Div.1972), *aff'd* by order, 32 N.Y.2d 749, 344 N.Y.S.2d 643, 297 N.E.2d 523 (1973), the court rejected the holding of *People v. Cline,* 270 Cal.App.2d 328, 75 Cal. Rptr. 459 (1969), that the intervening act of a deceased does not absolve an accused, on the basis of its construction of the state manslaughter statute under consideration which required a reckless cause of death of another person. However, in *People v. Cruciani,* 36 N.Y.2d 304, 367 N.Y.S.2d 758, 327 N.E.2d 803 (1975), the court affirmed a conviction under the statute when the accused injected heroin into the deceased.

2. The record reflects the military judge complied with the requirements of *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), before accepting the appellant's pleas of guilty.

FLETCHER, Chief Judge (dissenting):

I dissent. I cannot agree with the majority's interpretation of Article 119(b)(2), UCMJ, 10 U.S.C. § 919(b)(2), particularly their perception of the meaning of the term "while." I believe that the term "while" properly "is a word of time and not of causation." *Romero v. Volunteer State Life Ins. Co.,* 10 Cal.App.3d 571, 88 Cal. Rptr. 820, 824 (1970). *See Curl v. State,* 40 Wis.2d 414, 162 N.W.2d 77 (1968). *Cf. Anderson v. State,* 231 Ga. 243, 201 S.E.2d 147 (1973); *Hayes v. Ampex Corp.,* 85 N.M. 444, 512 P.2d 1280 (1973).