**UNITED STATES, Appellee,**

v.

**Roosevelt COOKE, Staff Sergeant, U.S. Army, Appellant.**

No. 44387.

CM 441428.

U.S. Court of Military Appeals.

July 2, 1984.

For Appellant: *Captain Kenneth G. Gale* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire, II, Major Paul J. Luedtke* (on brief); *Captain Thomas R. Peppler.*

For Appellee: *Captain Patrick M. Flachs* (argued); *Colonel R.R. Boller,*

*Lieutenant Colonel John T. Edwards, Captain John L. Plotkin* (on brief); *Colonel James Kucera.*

*Opinion of the Court*

COOK, Senior Judge:

Appellant was tried by a general court-martial with members. Contrary to his pleas, he was convicted of drunk driving, reckless driving, and involuntary manslaughter, in violation of Articles 111 and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 911 and 919, respectively.* We granted review of the following assigned issue:

> WHETHER, IN A PROSECUTION FOR DRUNKEN DRIVING, RECKLESS DRIVING AND INVOLUNTARY MANSLAUGHTER, THE MILITARY JUDGE ERRED BY FAILING TO GIVE THE REQUESTED INSTRUCTION ON CONTRIBUTORY NEGLIGENCE WHEN THAT DEFENSE WAS REASONABLY RAISED BY THE EVIDENCE.

Appellant was driving his automobile on Fort Benning, Georgia. The posted speed limit was 45 miles per hour, and appellant was traveling at approximately that speed. It was about 7:00 p.m. on April 3, 1981. Though dusk was approaching, it was still daylight. The weather was clear, the pavement dry, and the road straight and unobstructed.

Special Agent (Military Intelligence) Phillip Ingle was driving behind appellant and observed appellant's car being driven in an erratic manner. On three occasions more than half of appellant's car crossed over the center line into the on-coming traffic lane. On the third occasion, the car swerved off the right edge of the road and struck the deceased's pick-up truck which was parked on the right-side shoulder. The deceased and a companion were evi-

* Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of two-thirds pay per month for 1 year, and reduction to pay grade E–1. The convening authority approved the sentence, with minor modifications as to the forfeitures, and the Court of Military Review affirmed.

dently working on the truck at the time. Apparently, the deceased was standing between the truck and the road. Appellant's car struck the left-rear portion of the truck, swept along the left side of the truck where the deceased was standing, and carried or dragged the deceased 109 feet from the truck. Appellant's vehicle proceeded on, out of control, and came to rest approximately 238 feet from the truck. The deceased was pronounced dead on arrival at the hospital. His companion, who was apparently under the truck at the time, was found 29 feet from the truck. Though gravely injured and unable to recall the events due to his injuries, he survived.

Several witnesses for the defense testified that appellant had consumed only two beers and part of a third that afternoon after work. However, the percentage of alcohol in appellant's blood indicated that he had consumed the equivalent of more like 11 or 12 beers at the time of the incident. Numerous law enforcement officials who either responded to the scene or had a role in transporting or detaining appellant were able to detect the odor of alcohol distinctly on appellant's breath and clothing.

Appellant contended that, at the time of the accident, he had his vehicle under control. He maintained that, as he approached the truck, he observed a large group of pedestrians—perhaps 15 to 20—about to cross the road from the opposite, or left-hand, side of the road. Accordingly, he made an evasive turn to the right to avoid striking the pedestrians. It was during this maneuver that he struck the deceased's truck. Though appellant saw the truck in advance, he did not see anyone standing in the vicinity of the truck and was not aware that anyone had been injured until later.

Agent Ingle, closely following appellant's vehicle, did see the deceased standing beside the truck prior to the accident. However, according to Ingle, there were no other people, pedestrians or otherwise, visible in the vicinity of the collision. The next person to arrive at the scene, according to Ingle, was Military Police Specialist Four Robert E. Slocum, who had been traveling in the opposite direction of the roadway and was some 50–75 yards from the accident when it occurred. Slocum recalled that there were "[a] very small number" of people at the scene when he arrived.

Ingle did not observe any brake lights or tail lights on appellant's vehicle prior to the accident, nor did he hear appellant sound his horn. No skid marks were found on the road by the police. The truck had been parked on the shoulder approximately three feet to the right of the white line which marked the extremity of the traffic lane.

The military judge instructed the court members that they could only find appellant guilty of involuntary manslaughter if, *inter alia*, they found that appellant "caus[ed]" his vehicle to strike the victim, and that the victim's death "resulted" from this act. Appellant requested the following instruction on the defense of "contributory negligence":

> With reference to the evidence tending to show that the deceased failed to exercise reasonable care and caution for his own safety, you are advised that such failure is no defense if you are satisfied beyond a reasonable doubt that the accused was culpably negligent and that his culpable negligence was a proximate cause of the death. The accused is not relieved of responsibility therefrom because the negligence of the deceased may have contributed in producing the result. However, the conduct of the deceased is material to the question of whether the accused's alleged culpable negligence was a proximate cause of the death of the deceased. In this regard a proximate cause need not be the sole cause but it must be a direct cause or a contributing cause which plays a material role in the alleged victim's death. However, it is not a proximate cause if some other force independent of the (act) (omission) of the accused intervened as a cause of death.

This proposed instruction was taken from Department of the Army Pamphlet No. 27–

9, Military Judges' Guide, p.4–98 (October 22, 1969). Defense counsel argued that the deceased contributed to the accident by parking the truck close to the road, leaving the door open, failing to use flashers, and standing between the truck and the road. The military judge declined to give the instruction.

There is no particular discussion of the concept of proximate cause in the Manual for Courts-Martial, United States, 1969 (Revised edition). One of the few military opinions on the subject is *United States v. Moglia,* 3 M.J. 216 (C.M.A. 1977), which held that an accused's act of transferring heroin to the deceased was a proximate cause of the death, even though the accused did not inject the heroin into the deceased. We quoted *United States v. Romero,* 1 M.J. 227, 229 (C.M.A. 1975), as follows:

> To be proximate, an act need not be the sole cause of death, nor must it be the immediate cause—the latest in time and space preceding the death. But a contributing cause is deemed proximate only if it plays a material role in the victim's decease. *See United States v. Houghton,* 13 U.S.C.M.A. 3, 32 C.M.R. 3 (1962); 1 Warren, Homicide § 59 (perm. ed. 1938); 1 Wharton, Criminal Law and Procedure § 290 (1957).

3 M.J. at 217.

Professors LaFave and Scott, in their *Handbook on Criminal Law* (1972), at 249–50, describe proximate cause thusly:

> In torts law there is the situation where A wrongfully (intentionally or negligently) starts a fire which by itself is sufficient to burn B's property, while at about the same time X (wrongfully or innocently) or lightning starts another fire also sufficient to burn B's property. The two fires meet and combine and burn B's property. Here one cannot say that but for A's conduct B's property would not have been burned. Yet A is held to have caused the injury to B's property.
>
> In the criminal law too the situation sometimes arises where two causes, each alone sufficient to bring about the harmful result, operate together to cause it. Thus A stabs B, inflicting a fatal wound; while at the same moment X, acting independently, shoots B in the head with a gun, also inflicting such a wound; and B dies from the combined effects of the two wounds. *It is held that A has caused B's death (so he is guilty of murder if his conduct included an intent to kill B, manslaughter if his conduct constituted recklessness). (X, of course, being in exactly the same position as A, has equally caused B's death.) So the test for causation-in-fact is more accurately worded, not in terms of but-for cause, but rather: Was the defendant's conduct a substantial factor in bringing about the forbidden result?* Of course, if the result would not have occurred but for his conduct, his conduct is a substantial factor in bringing about the result; but his conduct will sometimes be a substantial factor even though not a but-for cause.

(Emphasis added; footnotes omitted).

R. Perkins, *Criminal Law,* 698–701 (2d ed. 1969), treats the subject in an almost identical fashion. Perkins goes on to discuss the negligence of the victim:

> It must not be assumed that negligence of the deceased or of another is to be entirely disregarded. Even though the defendant was criminally negligent in his conduct it is possible for negligence of the deceased or another to intervene between his conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation. *This is true only in situations in which the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result.* In one case, for example, the defendant by his criminal negligence had created a risk of explosion in a building. The deceased, after being fully warned of the danger and urgently requested to stay out, went in and was

killed. This death was held to be imputable solely to the negligence of the deceased and not at all to the negligent conduct of the defendant. In another case, while the driver of a horse-drawn vehicle did not even have the reins in his hands, a child suddenly ran in front and was killed. Erle, J., charged the jury that if by the utmost care on his part the driver could not have prevented the accident, he must be acquitted.

In like manner the negligence of a third person may intervene in such a way as to be the sole cause of resulting death within the legal view. For example, a starter was criminally negligent in starting a second train too soon after the first had departed and the second train crashed into the first, killing a passenger. But this homicide was imputed solely to the negligence of a flagman who got confused in his signals and held up the first train until it was struck by the second.

*Id.* at 703 (emphasis added; footnotes omitted).

These passages accord with our understanding of proximate cause. Thus, assuming the evidence in the instant case raised the possibility that the deceased was negligent, the question is—did the deceased's negligence "loom so large" in comparison with appellant's that appellant's negligence could not be regarded as a substantial factor in the final result? In our opinion, merely asking the question suggests the answer. Independent of the manslaughter, appellant was convicted of separate specifications of drunken and reckless driving. In the process of so driving, he either lost control of his vehicle or deliberately swerved it off the road and crashed it into another vehicle (and the deceased) standing on the shoulder. While it would have been preferable for the military judge to have indulged the defense in this instruction since some inferences can be drawn in support of the defense theory, we can imagine no circumstance in which reasonable court members could have discounted appellant's flagrant conduct as a substantial factor in the fatality. We are satisfied, as a matter of law, that rendering the instruction as requested would not have aided appellant. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). Accordingly, no relief is warranted.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.